UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

BRIAN M.,[1]

            Plaintiff,

   v.

COMMISSIONER OF SOCIAL
SECURITY,

            Defendant.

_____

        21-CV-06148-LJV
        DECISION & ORDER

On February 11, 2021, the plaintiff, Brian M. ("Brian"), brought this action under the Social Security Act ("the Act"). Docket Item 1. He seeks review of the determination by the Commissioner of Social Security ("Commissioner") that he was not disabled.[2] *Id.* On December 27, 2021, Brian moved for judgment on the pleadings, Docket Item 7; on May 12, 2022, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 8; and on June 23, 2022, Brian replied, Docket Item 9.

_____

[1] To protect the privacy interests of Social Security litigants while maintaining public access to judicial records, this Court will identify any non-government party in cases filed under 42 U.S.C. § 405(g) only by first name and last initial. Standing Order, Identification of Non-Government Parties in Social Security Opinions (W.D.N.Y. Nov. 18, 2020).

[2] Brian applied for Supplemental Security Income ("SSI"), which is paid to a person with a disability who also demonstrates financial need. 42 U.S.C. § 1382(a). A qualified individual may receive both Disability Insurance Benefits ("DIB") and SSI, and the Social Security Administration uses the same five-step evaluation process to determine eligibility for both programs. *See* 20 C.F.R. §§ 404.1520(a)(4) (concerning DIB), 416.920(a)(4) (concerning SSI).

For the reasons that follow, this Court denies Brian's motion and grants the Commissioner's cross-motion.[3]

## **STANDARD OF REVIEW**

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).  The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination."  *Id*.  This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act."  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (alterations omitted) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)).  Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'"  *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)).  "Substantial evidence" means "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."  *Johnson*, 817 F.2d at 986.

---

[3] This Court assumes familiarity with the underlying facts, the procedural history, and the decision of the Administrative Law Judge ("ALJ") and refers only to the facts necessary to explain its decision.

## DISCUSSION

### I.      ALJ'S DECISION

On August 6, 2020, the ALJ issued a decision finding that Brian had not been
under a disability since filing his protective application for SSI on May 1, 2018.  *See*
Docket Item 5 at 19-32.  The ALJ's decision was based on the five-step sequential
evaluation process under 20 C.F.R. § 416.920(a).  *See id.*

At step one, the ALJ found that since the first quarter of 2018, Brian had not
engaged in substantial gainful activity for a continuous 12-month period.  *Id.* at 23.  At
step two, the ALJ found that Brian suffered from two severe, medically determinable
impairments: disruptive mood dysregulation disorder and migraines.  *Id.*

At step three, the ALJ found that Brian's severe, medically determinable
impairments did not meet or medically equal one of the listed impairments in 20 C.F.R.
Part 404, Subpart P, Appendix 1.  *See id.* at 24-25.  More specifically, the ALJ found
that Brian's physical impairments did not meet or medically equal listing 11.02
(epilepsy)*, id.* at 24, and that Brian's mental impairments did not meet or medically
equal listing 12.04 (depressive, bipolar, or related disorders)*, id.*  In assessing Brian's
mental impairments, the ALJ found that Brian was: (1) moderately impaired in
understanding, remembering, or applying information; (2) moderately impaired in
interacting with others; (3) moderately impaired in concentrating, persisting, or
maintaining pace; and (4) moderately impaired in adapting or managing himself.  *Id.* at
24-25.

The ALJ then found that Brian had the RFC[4] to "perform work a full range of work at all exertional levels" except that:

> [Brian] can perform simple, routine tasks in a work setting with only occasional changes.  He can tolerate occasional interactions with supervisors after initial training[;]  occasional, non-collaborative interactions with coworkers[;] and rare interactions (1% to 5% of the workday) with the general public.  He is limited to a work setting with no flashing lights and a moderate noise level as defined by the Selected Characteristics of Occupations (SCO).

*Id.* at 25-26.

At step four, the ALJ found that Brian could no longer perform any past relevant work.  *Id.* at 30.  But given Brian's age, education, and RFC, the ALJ found at step five that Brian could perform substantial gainful activity as a garment folder, laundry laborer, or caretaker.  *Id.* at 31; *see Dictionary of Occupational Titles* 789.687-066, 1991 WL 681266 (Jan. 1, 2016); *id.* at 361.687-018, 1991 WL 672992; *id.* at 301.687-010, 1991 WL 672653.  Therefore, the ALJ found that Brian had not been under a disability or entitled to SSI since his application was filed on May 1, 2018.  *See* Docket Item 5 at 32.

## II.   ALLEGATIONS

Brian argues that the ALJ erred in two ways.  *See* Docket Item 7-1 at 8-15.  First, he argues that the ALJ improperly rejected the limitations regarding his migraine headaches made by a consultative examiner, Harbinder Toor, M.D.  *Id.* at 8.  Second, he argues that the ALJ improperly rejected his subjective complaints regarding the

---

[4] A claimant's residual functional capacity ("RFC") is the most he "can still do despite [his] limitations . . . in an ordinary work setting on a regular and continuing basis."  *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8p, 1996 WL 374184, at *2 (Jul. 2, 1996)).  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."  *Id.*

severity of his migraine headaches.  *Id.*  For the reasons that follow, the Court disagrees.

### III.   ANALYSIS

#### A.  Dr. Toor's Opinion

For claims filed on or after March 27, 2017, such as Brian's, the ALJ no longer "defer[s] or give[s] any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources."  *Angela H.-M. v. Comm'r of Soc. Sec.*, 631 F. Supp. 3d 1, 7 (W.D.N.Y. 2022) (internal quotation marks omitted) (quoting 20 C.F.R. § 416.920c(a)). Instead, the ALJ evaluates the opinion evidence and "articulate[s] . . . how persuasive [he or she] finds the medical opinions in the case record."  *Id.* (citing 20 C.F.R. § 416.920c(b)).

The Code of Federal Regulations lists five factors for the ALJ to consider when evaluating a medical opinion: (1) the amount of evidence the source presents to support his or her opinion; (2) the consistency between the opinion and the record; (3) the provider's relationship with the claimant, including the length, frequency, purpose, and extent of the relationship; (4) the provider's specialization; and (5) any other factors that "tend to support or contradict" the opinion.  20 C.F.R. § 416.920c(c)(1)-(5).  The ALJ always must explain how [he or she] considered the supportability and consistency factors" because they are "the most important factors," and he or she "may, but [is] not required to, explain how [he or she] considered the [remaining] factors."  *Id.* § 416.920c(b)(2).

On July 16, 2018, Dr. Toor examined Brian and opined that Brian's "[m]igraine headaches can interfere with his routine" but that there were "[n]o other medical limitations suggested by today's evaluation."  Docket Item 5 at 315.  The ALJ found that "Dr. Toor's overall findings are persuasive, except for his comment regarding [Brian's] migraine headaches."  *Id.* at 29.  As to supportability, the ALJ found that Dr. Toor's opinion about migraines was (1) largely based on Brian's "self-report of debilitating migraine symptoms"; (2) not supported by the examination's normal physical and mental status findings; and (3) not supported by a review of Brian's medical records or imaging scans.  *Id.*  As to consistency,  the ALJ concluded that Dr. Toor's opinion was consistent with "[Brian's] more recent treatment for migraine[s] and need for medication management through his primary care provider."  *Id.*

The ALJ properly analyzed and articulated the supportability and consistency of Dr. Toor's opinion, and Brian does not suggest otherwise.  Moreover, contrary to Brian's argument, *see* Docket Item 7-1 at 8, the ALJ did not "reject" Dr. Toor's opinion.  *Cf. Larson v. Comm'r of Soc. Sec.*, 2020 WL 5018331, at *10 (W.D.N.Y. Aug. 25, 2020) ("Indeed, an ALJ does not necessarily 'reject' opinion evidence by according it less than controlling weight . . . .").  Instead, the ALJ determined that Dr. Toor's opinion did not support more than a moderate impairment in Brian's ability to adapt or manage himself.  *See* Docket Item 5 at 29.  And in the RFC, the ALJ accounted for Brian's moderate impairment in adaptation by limiting him to performing only "simple, routine tasks in a work setting with only occasional changes."  *Id.* at 25; *see, e.g.*, *McIntyre v.* Colvin, 758 F.3d 146, 150 (2d Cir. 2014) (finding that moderate limitations in the four areas of

mental work-related functioning are not inconsistent with a limitation to simple, unskilled work).

Brian does not explain how Dr. Toor's finding that Brian's migraines might interfere with his routine was inconsistent with a moderate impairment or the limitations included in the RFC, nor does Brian suggest how Dr. Toor's opinion should have changed the RFC in any way.  *See Barry v. Colvin*, 606 F. App'x 621, 622 (2d Cir. 2015); *see also Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) ("Here, Smith had a duty to prove a more restrictive RFC, [he] and failed to do so.").  Brian's first argument therefore falls short.

### B.  Evaluation of Brian's Subjective Complaints

An ALJ must determine "the extent to which [the claimant's] alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence to decide how [the claimant's] symptoms affect [his or her] ability to work."  20 C.F.R. § 416.929(a).  This is a two-step inquiry.  *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010); *see* 20 C.F.R. § 416.929(d).  First, the ALJ "consider[s] whether there is an underlying medically determinable physical or mental impairment[] that could reasonably be expected to produce an individual's symptoms, such as pain."  SSR 16-3p, 2016 WL 1119029, at *2 (Mar. 16, 2016).  "Second, once an underlying physical or mental impairment[] that could reasonably be expected to produce an individual's symptoms is established, [the ALJ] evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities."  *Id.*

An ALJ's evaluation of a claimant's subjective complaints is "entitled to great deference and therefore can be reversed only if [it is] patently unreasonable." *Pietrunti v. Dir., Off. of Workers' Comp. Programs*, 119 F.3d 1035, 1042 (2d Cir. 1997) (internal quotation marks and citation omitted); *see also Perez v. Barnhart*, 440 F. Supp. 2d 229, 235 (W.D.N.Y. 2006) (acknowledging that the "patently unreasonable" standard applies in the Social Security context); *David C. v. Comm'r of Soc. Sec.*, – F. Supp. 3d –, 2023 WL 2379007, at *11 (W.D.N.Y. Mar. 6, 2023) (same).  That is because an ALJ "has the opportunity to observe witnesses' demeanor, candor, fairness, intelligence[,] and manner of testifying" and therefore is in the best position to assess accurately a claimant's subjective complaints.  *David C.*, 2023 WL 2379007, at *11 (internal quotation marks and citation omitted).

Here, the ALJ explicitly identified Brian's migraine-related complaints:

> [Brian] testified that he experienced migraine[s] four to five [hours] per day.  His migraine[s] could last for eight to twenty-four hours.  He explained that his migraine-related pain fluctuated.  He reported experiencing noise and light sensitivity with migraine[s].  His history of migraine[s] also caused problems concentrating.

Docket Item 5 at 26.  And the ALJ then correctly followed the two-step inquiry.  At step one, he found that Brian's "medically determinable impairments could reasonably be expected to cause the alleged symptoms[.]" *Id.*  At step two, however, he concluded that Brian's "statements concerning the intensity, persistence[,] and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." *Id.*

The ALJ's conclusion that Brian's migraine headaches were not as disabling as alleged was supported by substantial evidence and therefore not patently unreasonable.

For example, the ALJ noted that while Brian alleged that he had experienced debilitating migraines since the age of five, *see id.* at 44, 313, there was no evidence that he had received treatment for his migraines prior to 2018, *see id.* at 305 (2006 record from New York State Department of Correctional Services noting that Brian's medical history was limited to left knee arthroscopic surgery in 2002); *id.* at 324, 326 (2014 records from Rochester General Medical Associates noting that Brian had no significant prior medical history).  In fact, Brian did not begin taking medication for migraines until the summer of 2018, *see id.* at 352-53, and in September 2018, Brian first started treatment with Unity Rehab Neurology for "headaches, migraine-type with aura, uncontrolled," *id.* at 355.

At that visit, Mariel Davila-Martinez, M.D., noted that Brian's headaches were triggered by smoking and poor sleep but that there were "[n]o red flags on headache description" and that Brian's neurological exam was normal.  *See id.* at 355.  Dr. Davila-Martinez deferred brain imaging, and she prescribed medication and instructed Brian to return in eight weeks.  *Id.*  But Brian cancelled his follow-up appointment scheduled for November 6, 2018*, id.* at 351, and he did not show up for subsequent appointments on December 11, 2018, and January 15, 2019, *see id.* at 348-51.  So Unity dropped Brian as a patient on July 1, 2019, *id.* at 348, and the ALJ correctly observed that the record did not indicate that Brian had sought any additional treatment for his migraines after Unity, *see id.* at 27.

The ALJ also noted that Brian's migraines had never resulted in hospitalization or even an emergency room visit, and the ALJ concluded that Brian's "conservative and inconsistent course of migraine treatment is inconsistent with a level of severity that would preclude him from sustaining any work activity."  *Id.* at 27-28.  And this Court

9

agrees that Brian's lack of treatment for migraines before 2018, as well as his failure to follow a consistent course of treatment after that, provided substantial evidence that Brian's migraines were not as severe as alleged.  *See Navan v. Astrue*, 303 F. App'x 18, 20 (2d Cir. 2008); *Campbell v. Astrue*, 465 F. App'x 4, 7 (2d Cir. 2012).  So Brian's second argument for remand falls short as well.

## CONCLUSION

The ALJ's decision was not contrary to the substantial evidence in the record, nor did it result from any legal error.  Therefore, and for the reasons stated above, Brian's motion for judgment on the pleadings, Docket Item 7, is DENIED, and the Commissioner's cross-motion for judgment on the pleadings, Docket Item 8, is GRANTED.  The complaint is DISMISSED, and the Clerk of Court shall close the file.


SO ORDERED.

Dated:      July 31, 2023
            Buffalo, New York


                                        */s/ Lawrence J. Vilardo*
                                        LAWRENCE J. VILARDO
                                        UNITED STATES DISTRICT JUDGE